UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>                    22-CR-06132 (EAW)

UNITED STATES OF AMERICA                    SENTENCING STATEMENT
                                            AND REQUEST FOR NON
                   V.                       GUIDELINE SENTENCE


<u>MATHEW SCHULMAN</u>

     I am an Assistant Federal Public Defender in the Western District of New York and I represent the defendant, Mathew Schulman, in the above-entitled action.  I make this affirmation in accordance with the requirements of Section 6A1.2 of the Sentencing Guidelines, "Statement of Defendant with Respect to Sentencing Factors," as promulgated by the United States Sentencing Commission.

     The factual statements made in this sentencing statement are based on investigations by members of my office, conversations with Mathew Schulman, his family and others, a review of the Presentence Report (hereinafter "PSR") and the following exhibits:

     Exhibit A:     Letter to the Court, written by Mathew Schulman;

     Exhibit B:     Letter to the Court, written by Deborah Griswold,
                    Mother of Mathew Schulman.


## BACKGROUND

     On January 25, 2023,  Mathew Schulman pleaded guilty to one count of possession of child pornography, in violation of Title 18, United States Code, §2252A(a)(5)(B).  Mr. Schulman will appear before this Court to be sentenced on November 7, 2023. The government and the defendant agree that the defendant's advisory guideline range is a term of imprisonment of 235 to 240 months.  However, the parties reserve the right to recommend a sentence outside of the Sentencing Guideline range.

Amendments to the Sentencing Guidelines are scheduled to go into effect on November 1, 2023.   Amendments regarding status points pursuant to §4A1.1(d), will reduce Mr. Schulman's criminal history score to I and reduce his advisory guideline range to 210-240 months imprisonment.  *See* PSR at ¶105.

Mr. Schulman has reviewed the PSR with defense counsel and has no objections.

## GENERAL SENTENCING AUTHORITY

The United States Supreme Court reaffirmed the importance of reserving sentencing discretion to federal district court judges, holding that:

> the federal sentencing statute...requires a sentencing court to consider Guidelines ranges..., but it permits the court to tailor the sentence in light of other statutory concerns as well.

*United States v. Booker*, 543 U.S. 220, 245-246 (2005).

District courts are required to accurately calculate the sentencing guidelines before considering the §3553(a) factors. *United States v. Dorvee*, 616 F.3d 174, 182 (2d Cir. 2010). Once the district court properly calculates the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the §3553(a) sentencing factors. *Id.* 18 U.S.C. §3553(a) directs the sentencing court to impose a sentence sufficient, but not greater than necessary to comply with the specific purposes of sentencing. These purposes are:

(1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(2) to afford adequate deterrence to criminal conduct;

(3) to protect the public from further crimes of the defendant; and

(4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In applying §3553(a) and its parsimony clause, the sentencing court must look to the nature and circumstances of the offense and the history and characteristics of the defendant; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the Guidelines themselves. *Dorvee*, 616 F.3d at 183.

18 U.S.C. §3661 directs that no limitation shall be placed on the information that the court may receive and consider for the purpose of imposing an appropriate sentence. The statutory construction of 18 U.S.C. §3553(a) supports the interpretation that the primary factors for the Court's consideration are the nature and circumstances of the offense and the history and characteristics of the defendant.

The importance of individualized sentencing is a central theme in federal criminal law. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate...the crime and punishment to ensue. *See Koon v. United States*, 518 U.S. 81, 113 (1996).

The Supreme Court reminded the district courts that:

The sentencing judge...has greater familiarity with...the individual case and the individual defendant before him than the Commission or the appeals court....He is therefore in a superior position to find facts and judge their import under §[3553(a)] in each particular case.

*Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal quotations omitted).

## THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mathew Schulman was born in Columbus, Ohio to Timothy Schulman and Deborah Griswold on March 13, 1986. When Mathew was approximately 10 years old, he was sexually

3

assaulted by, "J.E" an older bigger, child from his neighborhood.   Mathew liked to play in a field behind his house where he could climb apple trees.   One afternoon, while playing, J.E. dropped his pants and directed Mathew to perform oral sex on him.  J.E. told Mathew he would beat him up if he did not do what he was told.  Mathew was afraid of J.E. and confused by what he was asking him to do.  He obeyed J.E. because he did not want to get hurt.  J.E. forced Mathew to perform oral sex approximately 5-10 additional times over two years.   Mathew did not believe he could say no.  For years, he felt ashamed for letting himself go through with it and not fighting back.   Matthew never told his parents what happened to him.

Mathew lived in Ohio with his family until he was 11 years old.  When Mathew was 11, he and his family relocated to Webster, New York after his father found work in manufacturing.

Mathew's parents divorced shortly after moving to Webster.  His mother moved out of the family home and into her own apartment.  Mathew and his brother continued to live with their father.   His parents' divorce caused a financial strain on the family.  His mother had to work long hours to support herself.  Mathew was usually only able to visit her on weekends.  His father worked long hours too, leaving Mathew home to care for himself.  Mathew describes his family's situation growing up as barely keeping their heads above water.  Because his family was poor, Mathew was teased in middle school for his appearance.  His parents could not buy nice things and he was often shamed by other students for his clothing and appearance.  For Mathew, the taunting made him believe he was not as good as other people, it also made him feel diminished and irrelevant.  Socially, things improved for Mathew in high school.  He had a tight-knit group of friends to depend on and the bullying stopped.  Mathew graduated from Webster High School in 2005.

Mathew knew that his parents did the best they could for the family, and he has always loved them dearly.  Growing up he tried not to add to their burden.  He did what he was told and learned not to ask for much.  Mathew's  mother recalls Mathew being a good and sweet child, who never caused her any trouble. *See* Exhibit B, Letter from Deborah Griswold.

 Mathew remained close with his parents into adulthood.  He was still living with his father when he was arrested for the instant offense.   He helped his father make ends meet by splitting the cost of household expenses.  Since this arrest, Mathew's father has struggled to pay bills without Mathew's income.

Mathew feels immense guilt and feels that he abandoned his father.   Mathew's greatest fear is that his parents will die while he is in prison, and that he will never be able to spend time with them again.   His mother is 65 years old, and his father is 63 years old.  Even with the minimum sentence, Mathew's parents will be inf their 70s once he is released.

### *Male Sexual Abuse Survivors Are Less Likely to Report Their Abuse*

Half of male adolescent victims, like Mathew, are assaulted by another minor.  This may reinforce the false belief that boys are not abuse victims. [1]   The stigma of male sexual abuse carries over into adulthood.  Approximately 90 to 95% of all male sexual violations are not reported. Among the reasons for failure to report are issues of stigma, shame, guilt, embarrassment, fear of ridicule or not being believed because they do not fit the traditional role of a victim. [2]

---

[1] Gauthier-Duchesne, et al., Child Sexual Abuse, Self-esteem, and Delinquent Behaviors During Adolescence: The Moderating Role of Gender, *Journal of Interpersonal Violence*, 2022, Vol.37(15-16) at 2738.  Chrome extension://efaidnbmnnnibpcajpcglclefindmkaj/https://journals.sagepub.com/doi/pdf/10.1177/08862605211001466 (last accessed October 27, 2023).

[2] Thomas JC, Kopel J. Male Victims of Sexual Assault: A Review of the Literature; *Behav Sci (Basel)*. 2023 Apr 3; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10135558/ (last accessed October

A review of the literature regarding adult male sexual abuse found that the reality of male sexual abuse remains virtually invisible to the public. Researchers found numerous "myths" or misconceptions/biases that obfuscated male victims from being accepted and understood…four misconceptions: (a) it is rare, (b) women cannot be perpetrators, (c) only happens in prison, and (d) men do not suffer psychological consequences . . . men are too strong to be forced into unwanted sex." [3]

As a child, Mathew did not understand what was happening to him.  He knew that it made him feel bad about himself and that he did not want to do it.  He wrongly believed he was to blame for the abuse because he did not fight back.   The studies of male sexual abuse affirm Mathew's response to his own abuse, including his inability to address what happened to him. Mathew needs further treatment to address his abuse and the impact that it has had on his life.

### *Mathew is at a Greater Risk of Being Physically and Sexually Abused in Prison*

Because Mathew will enter the Bureau of Prisons (BOP) having been convicted of possessing child pornography, he is at greater risk of being physically and sexually abused in federal prison than other inmates. Indeed, he has already experienced verbal abuse by other inmates while at the Monroe County Jail.

Unfortunately for Mathew, in the prison social hierarchy, "child molesters" and "snitches" occupy the lowest rung. Prisoner's rights activist Leslie Walker noted in an interview with ABC news that "child sex offenders are at risk of being murdered, having their food taken, having their cells defecated and urinated in. Their life is truly a living hell." [4]

---

27, 2023).

[3] Thomas JC, Kopel J. Male Victims of Sexual Assault: A Review of the Literature; *Behav Sci (Basel)*. 2023 Apr 3; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10135558/ (last accessed October 27, 2023) (internal citations omitted).

[4]   *See,*   https://abcnews.go.com/US/prison-living-hell-pedophiles/story?id=90004.   (last accessed October 27, 2023).

To protect themselves from assault in prison, imprisoned sex offenders can request to be housed in solitary confinement. Although this solution addresses personal safety concerns within prison, the resulting isolation can be psychologically harmful. Long term solitary confinement is associated with "the decrease in the size of the hippocampus, the brain region related to learning, memory, and spatial awareness. . . a decrease in the formation of new neurons, and the eventual failure in hippocampal function. On the other hand, the amygdala increases its activity in response to isolation. This area mediates fear and anxiety, symptoms enhanced in prisoners in solitary confinement." [5]

Unfortunately for inmates like Mathew, the BOP is simply not capable of providing safe, supportive, housing and treatment on any long-term basis. The less time he spends there, the sooner Mathew can get the consistent psychological counseling and support that he so desperately needs. We ask the Court to recommend to the BOP that Mathew be designated to a facility that has a sex offender management program (SOMP) so that he has access to sex offender treatment while imprisoned. This recommendation will also increase the likelihood that he is housed with individuals convicted of similar offenses and, thereby, reduce his risk of being physically and sexually abused within the BOP.

An exceptionally lengthy sentence will not serve as any greater deterrent to either society or to Mathew.  In 2010 The Sentencing Project analyzed the deterrent effect of sentencing, concluding that "[e]xisting evidence does not support any significant public safety benefit of the practice of increasing the severity of sentences by imposing longer prison terms. In fact, research

---

[5] *See*, Elena Blanco-Suarez, Ph.D., The Effects of Solitary Confinement on the Brain, *Psychology Today*, 2/27/2019, available at https://www.psychologytoday.com/us/blog/brain-chemistry/201902/the-effects-solitary-confinement-the-brain#:~:text=The%20sustained%20stress%20of%20extreme,activity%20in%20response%20to%20isolation. (last accessed October 27, 2023).

findings imply that increasingly lengthy prison terms are *counterproductive*. Overall, the evidence indicates that the deterrent effect of lengthy prison sentences would not be substantially diminished if punishments were reduced from their current levels." [6]

### ***The Instant Offense***

Mathew was chatting with an undercover New York State Police Officer during the entirety of this offense, which began on May 4, 2021.  The police engaged Mathew in these chats for over a year.   Mathew and the undercover officer, "Molly", made plans to meet on a number of occasions during the year.  Mathew never went to meet Molly in person.  Nonetheless, the police persisted in their conversations with Mathew.  It is clear that they did not see him as a danger to the public, or else they would have arrested him much sooner.

During this time, Mathew was serving a term of sex offender probation and was supervised by Monroe County.    The police were aware that Mathew was on probation.  Upon information and belief, they did not notify Mathew's probation officer of their investigation until the day of his arrest.   Mathew accepts full responsibility for his actions and is very remorseful. However, the Court should not overlook the failure of Monroe County probation to effectively address Mathew's treatment needs.  One of the main goals of probation is rehabilitation.  In New York,  the law "contemplates and even requires a level of official supervision substantial enough "to insure that the defendant will lead a law-abiding life"  or to assist the probationer toward that goal. *See People v. Hale,* 93 N.Y.2d 454; *citing,* Penal Law § 65.10[1].  This mandate went unanswered for Mathew.

---

[6] *See,* Wright, Valerie, Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment, 2010,chrome-
xtension://efaidnbmnnnibpcajpcglclefindmkaj/http://www.antoniocasella.eu/nume/Wright_2010.pdf  (last accessed October 27, 2023).

## *Mathew is Remorseful and Committed to Making Amends*

Mathew knows he committed a terrible crime.  His life has been altered forever.  Mathew has accepted complete responsibility for his actions and blames no one but himself.

During the seventeen months Mathew has been detained since his arrest, he has reflected on his life and the actions that led to his arrest.  In his letter to the Court, Mathew states that he is ashamed of himself for what he has done.  *See* Exhibit A, Letter of Acceptance from Mathew Schulman.

## CONCLUSION

For all of these reasons, Mathew Schulman respectfully requests that this Court consider his remorse and acceptance of responsibility; and his strong family support, and impose a sentence that is sufficient, but not greater than necessary, along with an appropriate length of supervision.

**DATED**:  Rochester, New York
             October 29, 2023

Respectfully submitted,

**/s/ Wedade W. Abdallah**
Wedade W. Abdallah
Assistant Federal Public Defender
Federal Public Defender's Office
28 E. Main Street Suite 400
Rochester, New York 14614
(585) 263-2601; FAX: 585-263-5871
Wedade_Abdallah @fd.org
*Counsel for Mathew Schulman*

**TO:**   **Kyle Rossi**
          Assistant United States Attorney
          **Natalie Harrington**
          United States Probation Officer